# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| AMANDA STEPHENS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 3:14-CV-1972 |
| ) | Judge Aleta A. Trauger |
| ) | |
| TROY CAPITAL, LLC, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM & ORDER

Pending before the court is a Motion for Leave to File a First Amended Complaint ("Motion to Amend") (Docket No. 19) filed by plaintiff Amanda Stephens ("Stephens"), to which defendant Troy Capital, LLC ("Troy") has filed a Response in opposition (Docket No. 23.) For the following reasons, the court will deny the motion.

## BACKGROUND AND PROCEDURAL HISTORY

This is an action by a consumer seeking damages for an alleged violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, which prohibits debt collectors from engaging in abusive, deceptive, and unfair debt collection practices. Stephens is a resident of Sumner County, Tennessee and a "consumer" as defined by the FDCPA. Troy is a Nevada limited liability company, with a principal place of business in Las Vegas, Nevada, that is engaged in the business of purchasing debts from creditors and collecting the debts in, among other places, Tennessee. Troy is a "debt collector" as defined by the FDCPA.

On October 22, 2005, Stephens purchased a motor vehicle from Rivergate Toyota, a

1

Nashville dealership.[1] Stephens received title to the vehicle subject to a lien of record in favor of Citifinancial Auto Credit, Inc. ("Citifinancial"). Stephens's sales contract with Rivergate Toyota was then sold and assigned to Citifinancial. Subsequently, the sales contract was sold and assigned to Troy.

Stephens made regular monthly payments on the loan until October 2006, when she had to take a job that paid less money. Stephens acknowledged her indebtedness in one or more telephone conversations with representatives from Citifinancial and asked whether the parties could work out a revised payment plan. Citifinancial declined. Stephens made no further payments on the loan; the last payment on the loan was therefore made in "late 2006."

Six and one-half years later, on July 29, 2013, Troy filed suit against Stephens in the Sumner County General Sessions Court to collect a deficiency balance allegedly due and owing on the automobile loan.[2] Troy attached an "Affidavit of Plaintiff's Claim" ("Affidavit") to its Civil Warrant incorrectly stating the amount and date of the last payment on Plaintiff's account. Stephens believed that the information contained within the Affidavit pertained to a debtor other than Stephens, yet was used as the basis for the suit against Stephens.[3]

Trial was scheduled for January 7, 2014. On multiple occasions prior to trial, Stephens attempted to contact counsel for Troy to advise that the General Sessions suit had been filed well

---

[1] Facts are taken from the Complaint. (Docket No. 1.) Troy accepted these facts as true for the purposes of its Motion for Judgment on the Pleadings (*see* Docket No. 18) and the court continues to do so for the pending motion.

[2] Troy does not dispute that the statute of limitations for a breach of contract action for the purchase of an automobile, under Tennessee law, is four years. *See* Tenn. Code Ann. § 47-2-725(1).

[3] Troy does not dispute that its Civil Summons represented an attempt to collect a debt within the meaning of the FDCPA.

outside the applicable four-year statute of limitations.  Troy never responded.  While in court on January 7, 2014, Stephens refused to settle with Troy; Stephens once again advised that collection of the debt was barred by the applicable statute of limitations.  Counsel for Troy requested and was granted a continuance of trial until August 5, 2014.

After the initial hearing, Stephens retained counsel, who, through phone calls and written correspondence, attempted to contact counsel for Troy to discuss the statute of limitations issue.  Counsel for Troy never responded.  Counsel for Stephens therefore prepared the case for trial on August 5, 2014.  On July 15, 2014, counsel for Troy filed with the General Sessions court loan documents pertaining to a debtor other than Stephens, presumably for use at trial.

While in court on August 5, 2014, counsel for Stephens once again advised counsel for Troy that (1) Troy had filed loan documents with the court pertaining to the wrong debtor, (2) the date and amount of last payment stated in the Affidavit was based on information pertaining to the wrong debtor, and (3) Troy's claim was barred by the applicable statute of limitations.  In response, counsel for Troy voluntarily dismissed the claim against Stephens without appearing before the judge.

On October 14, 2014, Stephens filed a Complaint in this court containing one claim for relief under the FDCPA.  (Docket No. 1.)  The gravamen of the Complaint is that Troy violated the FDCPA by bringing suit on a claim that it knew or should have known was barred by the statute of limitations and continuing to pursue that action without making a reasonable inquiry as to whether Stephens's statute of limitations defense was valid.  Troy answered the Complaint, albeit belatedly, on December 11, 2014.  (Docket No. 9.)

On March 2, 2015, Troy filed a Motion for Judgment on the Pleadings.  (Docket No. 17.)

Troy contended that Stephens's action ran afoul of the FDCPA's one-year statute of limitations. More specifically, Troy argued that (1) the one-year limitations period began to run upon the institution of Troy's action against Stephens (either on the day of filing on July 29, 2013, or the day after service on August 2, 2013), but (2) Stephens did not file the FDCPA Complaint until October 14, 2014, more than fourteen months later. Accordingly, Troy argued that the action was time-barred. *Id.*

On March 13, 2015, Stephens filed the pending Motion to Amend. (Docket No. 19.) Stephens concurrently filed a Motion to Stay Stephens's response to the Motion for Judgment on the Pleadings for the sake of efficiency, arguing that if the Motion to Amend were granted, the Motion for Judgment on the Pleadings should be dismissed as moot. (Docket No. 21.) The court granted that request. (Docket No. 22.) On March 27, 2015, Troy filed its Response to the Motion to Amend. (Docket No. 23.)

## ANALYSIS

### I.   Rule 15(a) Legal Standard

Federal Rule of Civil Procedure 15(a) governs amending pleadings before trial. A party may amend a pleading once as a matter of course within (a) twenty-one days after serving it, or (b) if the pleading is one to which a responsive pleading is required, twenty-one days after service of a responsive pleading or twenty-one days after service of a motion under Rule 12(b), (e) or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). In all other cases, a party may only amend a pleading by obtaining the opposing party's written consent or receiving leave of the court. Fed. R. Civ. P. 15(a)(2). Where it is requested, "[t]he court should freely give leave when justice so requires." *Id*.

4

However, a motion to amend may be denied where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Riverview Health Institute LLC v. Medical Mutual of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss or a Rule 12(c) motion for judgment on the pleadings. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Department of Treasury, State of Michigan, Revenue Div.*, 987 F.2d 376, 382–83 (6th Cir. 1993)); *see also Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006) ("A Rule 12(c) motion for judgment on the pleadings for failure to state a claim upon which relief can be granted is nearly identical to that employed under a Rule 12(b)(6) motion to dismiss."). Stated differently, allowing an amendment that would subsequently be dismissed under a Rule 12(b)(6) motion or a Rule 12(c) motion for judgment on the pleadings does not serve the interests of justice.

## II. Motion to Amend

### A. Equitable Tolling and Fraudulent Concealment

Stephens seeks to amend the Complaint to add facts to enable the application of a theory of equitable tolling of the statute of limitations as a result of fraudulent concealment. Equitable tolling is to be determined on a case-by-case basis and is to be narrowly applied. *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 424 (6th Cir. 2009) (citing *Truitt v. Cnty. of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998); *Hill v. U.S. Dep't of Labor*, 65 F.3d 1331, 1336 (6th Cir. 1995)). Indeed, it is available only "in compelling circumstances which justify a departure from

established procedures." *Puckett v. Tenn. Eastman Co.*, 889 F.2d 1481, 1488 (6th Cir. 1989). The established procedure (*i.e.*, "general rule") for purposes of the statute of limitations is that courts in the Sixth Circuit "will not extend the statute of limitations 'by even a single day.'" *Ruth v. Unifund CCR Partners*, 604 F.3d 908, 910 (6th Cir. 2010) (quoting *Graham–Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000)). But there are exceptions to this rule, one of which applies to defendants who fraudulently conceal their wrongdoing and prevent a plaintiff from filing suit during the limitations period. *Id.* In those circumstances, the "right to be free of stale claims," *Burnett v. New York Cent. R.R. Co.*, 380 U.S. 424, 428 (1965), yields to the inequity of the defendant's conduct, *see Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946).

However, the standard for the application of equitable tolling is high, and the doctrine is only to be invoked sparingly. *See Ruth*, 604 F.3d at 910; *Souter v. Jones*, 395 F.3d 557, 590 (6th Cir. 2005); *Graham–Humphreys*, 209 F.3d at 560. Indeed, to be entitled to equitable tolling, a plaintiff bears a heavy burden that is satisfied "only in rare cases" and only upon a showing of "extraordinary circumstances." *Simmons v. BAC Home Loans Servicing, LP*, No. 3:14-cv761, 2014 WL 3844788, at *4 (M.D. Tenn. Aug. 5, 2014), *adopted by* 2014 WL 5392062 (M.D. Tenn. Oct. 22, 2014). Stated differently, only exceptional circumstances, not garden variety claims of excusable neglect, allow a court to toll the statute of limitations. *Ruth*, 604 F.3d at 913 (internal citations and quotation marks omitted); *see also Credit Suisse Sec. (USA) LLC v. Simmonds*, 132 S.Ct. 1414, 1419 (2012) (noting that one of the key issues in determining the applicability of equitable tolling is whether "some extraordinary circumstances" stood in the plaintiff's way).

"Three elements must be pleaded in order to establish fraudulent concealment: (1) wrongful concealment of [its] actions by the defendant[]; (2) failure of the plaintiff to discover

6

the operative facts that are the basis of h[er] cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts." *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 475 (6th Cir. 2013); *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 446-47 (6th Cir. 2012) (citing *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975)). A plaintiff must plead the factual allegations underlying a claim of fraudulent concealment with particularity. *Friedman v. Estate of Presser*, 929 F.2d 1151, 1160 (6th Cir. 1991). With regard to the wrongful concealment element the plaintiff must point to "affirmative acts of concealment." *Carrier Corp.*, 673 F.3d at 447 (citing *Hamilton Cnty. Bd. of Comm'rs v. Nat'l Football League*, 491 F.3d 310, 319 (6th Cir. 2007)). "[M]ere silence or unwillingness to divulge wrongful activities is not sufficient." *Browning v. Levy*, 283 F.3d 761, 770 (6th Cir. 2002); *Carrier*, 673 F.3d at 446. Instead, there must be some "'trick or contrivance intended to exclude suspicion and prevent inquiry.'" *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1467 (6th Cir. 1988) (quoting *Wood v. Carpenter*, 101 U.S. (11 Otto) 135, 143 (1879)); *Estate of Abdullah ex rel. Carswell v. Arena*, No. 14-1504, 2015 WL 664411, at *5 (6th Cir. Feb. 13, 2015) (noting that fraudulent concealment requires an affirmative act such as a statement and silence or passivity is not sufficient).

In the Motion to Amend and proposed amended complaint, Stephens seeks to add factual allegations to establish that Troy wrongfully concealed its actions related to the debt collection litigation by (1) never responding to Stephens's requests for verification of her debt and (2) never responding to Stephens's requests for information or documents regarding her debt during the pendency of the state court lawsuit.

As to the verification of Stephens's debt, Section 1692g(b) does not require a debt

7

collector to respond to a request for verification, only that it cease collection activities after it receives a request until it provides a response. *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1031-32 (6th Cir. 1992).[4] The only action that Troy pursued after Stephens's request for verification was maintenance of the state court action – something the Sixth Circuit has expressly held does not constitute a fresh "collection activity" subsequent to the initial filing of the lawsuit. *See Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 259 (6th Cir. 2014). Stephens, therefore, was not deceived anew each time Troy made filings reaffirming the legitimacy of its previously-filed state court action. *Id.; see also, e.g., Shimek v. Weissman, Nowack, Curry & Wilco, P.C.*, 374 F.3d 1011, 1014 (11th Cir. 2004) ("The plain language of Section 1692g(b) mandates that a debt collector 'cease collection of the debt' once verification is requested. . . . The statute does not require the law firm to take 'positive action.'. . .") Accordingly, Troy did not, by maintaining its court action and not responding to Stephens's requests for verification of her debt, engage in active misdeeds under the FDCPA that could be the basis of wrongful concealment.

As to the proposed new allegations concerning Troy's ignoring of Stephens's requests for

---

[4] As 15 U.S.C. § 1692g(b) specifies:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. . . .

8

information and documents – this is a good example of a case in which a party has merely demonstrated "silence or unwillingness to divulge wrongful activities." Troy received multiple admonitions, by telephone and in writing, over an extended period of time, from Stephens that it was pursuing her likely based on the wrong debt and far outside of the applicable limitations period. Instead of responding constructively, Troy remained silent and nonresponsive, even to the point that Stephens felt the need to hire counsel to protect her interests. Indeed, until the day this case was finally dismissed, aside from agreeing to a continuance, Troy essentially adopted a strategy of doing nothing. It is understandable that Stephens is displeased by this course of events. However, while Troy's behavior as a litigant may be of questionable candor, it does not fall within the Sixth Circuit's definition of wrongful concealment – *i.e.*, an affirmative action or trick or contrivance designed to exclude suspicion (as opposed to nonresponsiveness).

As Stephens cannot allege additional facts to establish fraudulent concealment, she is not entitled to the application of equitable tolling. Accordingly, any amended complaint would be futile.

### B. "Continuing Violations" Theory of Liability

Stephens also seeks leave to filed an amended complaint for the purpose of "re-articulating a claim" under Section 1692f under a "continuing violations" theory based on a purported pattern of deceptive conduct by Troy. More specifically, Stephens claims that each action that Troy took related to the pursuit of its litigation against Stephens on a time-barred debt is actionable as part of an overall unfair and unconscionable means to collect a debt because it is part of a pattern of repeated events that may be considered as an overall nefarious course of conduct.

9

This path to liability is, however, not available to Stephens. In 2014, the Sixth Circuit made clear that it has "never applied the continuing-violation doctrine to an FDCPA claim" and that "[n]o court of appeals has held that debt-collection litigation (or a misleading statement made in connection with that litigation) is a continuing violation of the FDCPA." *Slorp*, 587 F. App'x at 257; *see also Goodson*, 2014 WL 940492, at *5 (concluding the continuing violation doctrine is inapplicable to an FDCPA claim and noting that the vast majority of federal cases that have considered the issue have found that for statute of limitations purposes discrete violations of the FDCPA should be analyzed on an individual basis).[5] Tolling doctrines such as fraudulent concealment exist to address Stephens's situation, not the continuing violation doctrine. *Slorp*, 587 F. App'x at 259.

Accordingly, allowing an amended complaint for the purpose of alleging a continuing violations theory of liability under the FDCPA would be futile.

## **CONCLUSION**

For the foregoing reasons, plaintiff Amanda Stephens's Motion for Leave to File a First Amended Complaint (Docket No. 19) is DENIED as futile. The plaintiff shall respond to the

---

[5] Stephens's attempt to rely on *Tarrant v. Northland Group, Inc.* is unpersuasive for two reasons. *See Tarrant v. Northland Group, Inc.*, No. 3:10-cv-1204, 2012 WL 140431, at *1 (M.D. Tenn. Jan. 18, 2012). First, *Tarrant* was decided two years before the Sixth Circuit clarified this field of law in *Slorp*. Second, *Tarrant* is clearly distinguishable on the facts. *Tarrant* involved a pattern of repeated calls over a four-month period continuing into the one-year limitations period. *See id.* at *1 n.8. The court explained that in this factual scenario, the plaintiff's harassment claim could not "be said to occur on any particular day," rather than be comprised of discrete acts occurring on specific days. *Id.; see also Goodson*, 2014 WL 940492, at *5 (distinguishing *Tarrant*). Where, as here, the issue is a debt collection lawsuit, however, the FDCPA claim is one discrete event (*i.e.*, the filing thereof), and the prosecution of the litigation does not, by itself, give rise to other fresh violations of the FDCPA. *Slorp*, 587 F. App'x at 258-59.

pending Motion for Judgment on the Pleadings (Docket No. 17) within fourteen days.

It is so ORDERED.

Enter this 4th day of May 2015.

_____
ALETA A. TRAUGER
United States District Judge